1  JONATHAN D. MCDOUGALL
   STATE BAR NO. 212359
2  1640 Laurel Street
   San Carlos, CA  94070
3  Telephone:  (650) 594-4200
   Facsimile:  (650) 594-4205
4
   Attorney for Defendant
5  PETER LASELL

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8                 SAN FRANCISCO DIVISION

9

10 | THE UNITED STATES OF AMERICA,    )   No. CR 07-0716-MHP
                                      )
11 |              Plaintiff,           )   **DEFENDANT PETER LASELL'S**
                                      )   **SENTENCING MEMORANDUM**
12 | vs.                               )
                                      )
13 | PETER LASELL                     )   Date:  AUGUST 11, 2008
                  Defendant.          )   Time:  9:00 a.m.
14

**TABLE OF CONTENTS**

I. THE POST-BOOKER SENTENCING FRAMEWORK .................................3

II. FACTUAL RECITATIONS CONTAINED IN
THE PRESENTENCE REPORT .................................................................4

III. APPLICATION OF THE GUIDELINES TO THE
FACTS OF THIS CASE .................................................................................5

   A. INTRODUCTION .................................................................................5

   B. THE COURT'S AUTHORITY TO DEPART FROM
      THE GUIDELINE RANGE ..................................................................5

IV. MITIGATING FACTORS WHICH THE COURT SHOULD
CONSIDER INDETERMINING A REASONABLE SENTENCE
PURSUANT TO 18 U.S.C. 3553(a) .................................................................6

   A. INTRODUCTION .................................................................................6

   B. PETER LASELL'S EARLY ACCEPTANCE OF RESPONSIBILITY AND
      DISPLAY OF REMORSE ....................................................................7

   C. PETER LASELL'S EMPLOYMENT RECORD ...................................7

   D. PETER LASELL'S AGE AND UPBRINGING ....................................8

   E. PETER LASELL'S FAMILY TIES AND RESPONSIBILITIES..........8

   F. PETER LASELL'S FINANCIAL RESPONSIBILITY .........................8

V. DEFENDANT PETER LASELL'S REQUESTS OF THE COURT .................9

   1. Delayed Self-Surrender with Court review........................................9
   2. Self Surrender after January 1, 2009 .................................................9
   3. Judicial Recommendation for Local Facility ....................................9
   4. Imposition of Below Guidleline Fine Amount ................................13

VI. THE RECOMMENDATION CONTAINED IN THE
PRESENTENCE REPORT ............................................................................15

VII. CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Koon v. United States*, 518 U.S. 81, 92 (1996) .................................................. 5, 6

*Raytheon Co. V. Hernandez*, 540 U.S. 44, 49 n.3 (2003) ........................................ 5

*Rita v. United States*, __ U.S. __, 168 L. Ed. 2nd 203,
127 S. Ct. 2456 (June 21, 2007) ............................................................. 4

*United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) ................................. 6, 7

*United States v. Booker*, 543 U.S. 220 (2005) ................................................. 3, 4

*United States v. Cantrell*, 433 F.3d 1269 (9th Cir. 2006) ................................ 4

*United States v. Evans-Martinez*, 448 F.3d 1163 (9th Cir. 2006) ..................... 3

*United States v. Fagan*, 158 F.3d 1280 (10th Cir. 1998) ................................. 7

*United States v. Jaroszenko*, 92 F.3d 486 (7th Cir. 1996) ............................... 7

*United States v. Kimbrew*, 406 F.3d 1149 (9th Cir. 2005) ............................... 4

*United States v. Marial-Santiago*, 447 F.3d 715, 719 (9th Cir. 2006) ............ 4

*United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005) .......................... 3

*United States v. Mix*, 457 F3d 906, 911 (9th Cir. 2006) ................................. 4

## FEDERAL STATUTES

18 U.S.C. § 3553(a) ............................................................................. 4

18 U.S.C. § 3561(a) ............................................................................. 1, 6

# SENTENCING MEMORANDUM

The sentencing on the present cases comes before this Court by way of a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The defense therefore concedes that the parties agreed that a specific sentence of (48) months imprisonment and (5) years of supervised release was the appropriate disposition of the case. However, there remain several issues that were not addressed by the Plea Agreement and are within the discretion of this Court.

One, the defendant respectfully requests that the Court delays his surrender until such time as his medical and psychological condition stabilizes to the point he is not at risk of permanent impairment while in Federal custody.

Two, in the alternative, the defendant requests that he be allowed to self-surrender at a future date to allow for the creation of a proper "custodial" medical and psychological treatment plan consistent with his current medical and psychological treatment.

Three, the defendant asks this Court to provide a Judicial Recommendation for placement at a local treatment facility or local federal detention center (medical wing) to allow for continued treatment consistent with current medical providers.

Four, the Court impose a fine below the Sentencing Guidelines minimum.

## *I. THE POST-BOOKER SENTENCING FRAMEWORK*

As this Court is well aware, in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are effectively advisory, and no longer mandatory. 543 U.S. at 245. In the wake of *Booker*, federal sentencing is now governed by 18 U.S.C. 3553(a). *United States v. Menyweather*, 431 F.3d 692, 695 (9th Cir. 2005).

Federal sentencing courts are now required to calculate and consider the advisory guideline range as a starting point in sentencing. *United States v. Evans-Martinez*, 448 F.3d 1163, 1167 (9th Cir. 2006). However, the district courts are not required to sentence within that guideline range if the

1    court finds reasons to support an out-of-Guidelines sentence. Courts now have the discretion to
2    impose non-Guidelines sentences. *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) *See*
3    18 U.S.C. 3553(a)(4); *Booker*, 543 U.S. 245-46 (the statute permits the court to tailor the sentence in
4    light of other statutory concerns as well.)

5    Consistent with *Booker*, the Ninth Circuit follows a two-step procedure for reviewing
6    sentences imposed following the date the Supreme Court issued its opinion in *Booker*. *United States*
7    *v. Mix*, 457 F3d 906, 911 (9th Cir. 2006); *Cantrell*, 433 F.3d at 1279-81. First, the appellate court
8    determines whether the district court properly considered and applied the applicable Sentencing
9    Guidelines. *Cantrell*, 433 F.3d at 1279-81. Second, the Court of Appeals reviews the sentence for
10   reasonableness in light of the factors set forth in 18 U.S.C. 3553(a). *Cantrell*, 433 F.3d at 1280.

11   In sentencing defendants' post-*Booker*, this Court must first consult the Guidelines and
12   determine the correct guideline range, and then must consider the 3553(a) factors relating to this
13   particular case and the arguments of counsel, and decide whether the 3553(a) factors call for a
14   sentence within or outside of the Guidelines. Cantrell, 433 F.3d at 1279; *United States v. Kimbrew*,
15   406 F.3d 1149, 1152 (9th Cir. 2005). If the Court decides that a below-Guidelines sentence is
16   appropriate, then it must set forth enough of its reasoning to satisfy the appellate court that [the
17   district court] has considered the parties' arguments and has a reasoned basis for exercising [its] own
18   legal decision making authority. *Rita v. United States*, __ U.S. __, 168 L. Ed. 2nd 203, 127 S. Ct. 2456
19   (June 21, 2007). *See United States v. Marial-Santiago*, 447 F.3d 715, 719 (9th Cir. 2006) (affirming a
20   sentence as reasonable where the district court gave thoughtful attention to factors recognized in
21   3553(a) and exercised sound discretion.)

22   ***II. FACTUAL RECITATIONS CONTAINED IN THE PRESENTENCE REPORT***

23   Defendant Peter Lasell does not object to the factual "Offense Conduct" provided by the
24   Probation Department in the "Presentence Investigation Report."

25

## III. APPLICATION OF THE GUIDELINES TO THE FACTS OF THIS CASE

### A. INTRODUCTION

Defendant Peter Lasell has no objection to the calculation of his prior record score as calculated by the Probation Officer in the Pre-Sentence Report. Likewise, as stated in the Rule 11(c)(1)(C) Plea Agreement, the Guideline Range is correctly calculated at Offense Level 28 and Criminal History score of 0, for a recommendation of 78-97 months. The Plea Agreement also states that the parties agree to a (48) months imprisonment disposition.

However, the Plea Agreement did not bind this Court as to a surrender date, a fine amount, or any of the other requests from the defense. Likewise, the Guidelines do not ultimately control the Court's selection of a surrender date or a fine amount.

### B. THE COURT'S AUTHORITY TO DEPART FROM THE GUIDELINE RANGE.

Congress allows district courts to depart from the applicable Guidelines range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *Koon v. United States*, 518 U.S. 81, 92 (1996) (quoting 18 U.S.C. 3553(b)).

In determining whether the Commission has adequately taken a factor into consideration, "Congress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" *Id.* at 92-93 (quoting 18 U.S.C. 3553(b)). Four types of factors are relevant to departures: forbidden factors; encouraged factors; discouraged factors; and unmentioned factors. *See id.* at 93-96. Forbidden factors include race, sex, national origin, creed, religion, socioeconomic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. *Id.* With the exception of the forbidden factors, the Commission "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines that could

constitute grounds for departure in an unusual case." *Id.* at 93. Encouraged factors are ones that "the Commission has not been able to take into account fully in formulating the guidelines." *Id.* at 94. Discouraged factors, on the other hand, are "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Id.* at 95. In *Koon, supra*, the Supreme Court outlined the sentencing court's authority to consider each of these types of factors in deciding whether to depart:

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. *Id.* at 95-96.

If the factor does not fall into any of the above categories, it is considered unmentioned by the Guidelines. In *Koon*, the Supreme Court stated that if the factor is unmentioned, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." 116 S. Ct. at 2051. To make this determination, the court must consider "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole," *Id.* at 2045.

### IV. MITIGATING FACTORS WHICH THE COURT SHOULD CONSIDER IN DETERMINING A REASONABLE SENTENCE PURSUANT TO 18 U.S.C. §3553(a)

#### A. INTRODUCTION

In *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc) Wardlaw, J., concurring in part and dissenting in part) the court pointed out that "District Courts now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed not ordinarily relevant, such as age, education, and vocational skills, mental and emotional conditions, employment record, family ties and

responsibilities." *Id.* at 1093. In the instant case there are a number of factors which individually and taken as a whole mitigate in favor of the defense requests.

### B. PETER LASELL'S EARLY ACCEPTANCE OF RESPONSIBILITY AND DISPLAY OF REMORSE.

Peter Lasell has accepted responsibility at an early stage of the proceedings and cooperated with the authorities by providing a statement and information that incriminated him. Mr. Lasell cooperated with the Federal Agents at the time of the execution of the search warrant, including providing coded passwords to allow easier access to his entire hard drive. Further, prior to even an arraignment, Mr. Lasell provided a proffered statement to law enforcement. As a result if his computer, password, and statement, federal agents have initiated several criminal investigations. The defense has confirmed at least on international investigation and probable arrest for a Google Hello user – "purplemonkeydish." Peter Lasell has shown acceptance of responsibility and displayed that with his letter to the Probation Department.

Pre-Booker cases have recognized that "exceptional remorse" could form the basis for a downward departure from the Guidelines range even though a defendant has already received an adjustment for acceptance of responsibility. *United States v. Fagan*, 158 F.3d 1280, 1284-85 (10th Cir. 1998); *United States v. Jaroszenko*, 92 F.3d 486 (7th Cir. 1996). Obviously, extreme remorse is also a factor which can be considered in fashioning an appropriate sentence pursuant to 18 U.S.C. 3553(a). As the Presentence Report indicates, Mr. Lasell wrote "It is my expectation that I will carry the personal guilt for this for the rest of my life."

### C. PETER LASELL'S EMPLOYMENT RECORD

Peter Lasell has been employed in the pharmacy trade since 1975. He had an initial internship at Marshall Hale Hospital, San Francisco from 1975-1978, and proceeded with a career as a pharmacist until his disability ended his career in May, 2007. Mr. Lasell also taught as a professor at the University of the Pacific from 1982 to 1984.

### D.   PETER LASELL'S AGE AND UPBRINGING

Mr. Lasell is 57 years old, with a wife, Susan, and one son, Joshua. He was raised in Martinez, CA with his two siblings, Curtis and Carol Ann. Ms. Bernice Lasell is still alive and remains in Martinez. His brother died prematurely in 2005 from liver disease, which apparently caused some strong emotional turmoil with Mr. Lasell and contributed greatly to his depression. Mr. Lasell has been well educated and remained a vital member of society until his current criminal problems.

### E.   FAMILY TIES AND RESPONSIBILITIES

Mr. Lasell remains married to Susan Lasell, and living with their son, Joshua in Belmont, CA. His disability and conditions of pretrial release have prevented him from continuing any significant community relationships, but his ties to the Belmont community is very strong from his more than twenty year residence in the same home. The defense has included some character letters showing his ties to the community, written by family and friends. **[EXHIBIT A]**. Susan Lasell has assumed all of the financial responsibilities, in particular the income generating responsibilities since Mr. Lasell has been on disability for over a year. Also, Susan Lasell handles most of the family responsibilities because of Mr. Lasell's physical limitations.

### E.   FINANCIAL RESPONSIBILITY

Peter and Susan Lasell have shown extreme financial responsibility over the past 20 years. In this day and age of credit cards, debt, irresponsible house purchases, and over extended mortgages, the Lasell family's financial status has remained steady and extremely conservative. The couple has diligently preserved any extra wealth in retirement accounts, and painstakingly paid the balances on any credit cards within the same month. They only possess two vehicles, a 1995 Volvo and a 1992 Ford van, and their monthly living expenses show very little frivolous expenses. They have remained in the same home and delayed any renovations for over twenty years. Prior the current situation, the family was on the edge of enjoying the benefits of all their years of financial planning. Their son is a year from college – perhaps the final large financial responsibility for the family – and both are

nearing the age of 60. Susan Lasell now faces several years of depleting retirement accounts, college tuition and living expenses without assistance.

### V. DEFENDANT PETER LASELL'S REQUESTS OF THE COURT AT THE TIME OF SENTENCING

**1. Delayed Self- Surrender with a Court review in three month intervals**

**2. "Self- Surrender" on a date after January 1, 2009.**

**3. This Court's Judicial Recommendation for a local federal medical facility.**

18 U.S.C. § 3145(c) provides the two criteria necessary for a self surrender in this case.

1) proof by clear and convincing evidence that he is neither a flight risk nor a danger to the community; and

2) it is clearly shown that there are exceptional reasons why such a person's detention would not be appropriate."

There is significant evidence of both factors to justify a self-surrender in this case. The defense would respectfully suggest that both the probation department and the prosecution would agree on most of the factors.

**Background and Medical Condition**

Peter Lasell is a 57 year-old man with absolutely no criminal history until the present offense. He attended pharmaceutical school, where he met his wife, Susan to whom he married in 1979. Peter and Susan Lasell have one son, Joshua, who is about to enter his final year of High School with plans to attend college. Since his marriage in 1979, Peter Lasell has shown to be a prudent, well educated and thrifty husband and father, until his health abandoned him in over the past five years.

Peter Lasell suffers from a number of health conditions, stemming most seriously from back surgery in 2005. Currently, he is forced to be bed ridden for nearly twenty hours per day with both back pain and chronic migraine headaches. As listed in the Probation Report, Mr. Lasell suffers from the following ailments:

- glaucoma in both eyes

9

- hypertension
- chronic migraine headaches
- lumbar radiculopathy
- spinal stenosis
- hyperlipidemia
- GI reflux
- Numbness in both feet
- Rosacea
- Right foot drop secondary to knee surgery

Since 2005, as a result of both depression and his back deterioration, Mr. Lasell has been under constant supervision of several members of the Kaiser staff, including psychologists, psychiatrists, medical doctors, and surgeons. On a monthly basis, Peter Lasell has his medications re-evaluated in an attempt to determine a "mix" that will address his severe pain and depression.

At the time of the probation interview, Mr. Lasell was taking the following prescriptions:

- Neurontin (300 mg QHS)
- Lipoderm (5% patches 2xQD)
- Oxycodone (10mg 4xQ8H)
- Oxycodone (5mg 1-2xQ6H)
- Diazepam (10mg 1-2xBID)
- Fluoxetine (20mg 4xQAM)
- Strattera (10mg 1xQAM)
- Prilosec (20mg 1xBID)
- Xalatan (.005% 1xBID)
- Pepcid (20mg 1xBID)
- Simvastin (40mg 1xQPM)

10

1     - Atenolol (50mg 1xBID)

2     - Cozaar (100mg 1xBID)

3     - Metrogel (1xBID)

4 Mr. Lasell also takes the following over the counter medications:

5     - Oscal 500

6     - Vitamins

7     - Aspirin

8     - Afrin Nasal Spray

9     - Sudafed

Over the past four weeks, Mr. Lasell's doctors have again adjusted his medications in an attempt to control his physical pain and mental depression.

According to the Preliminary Probation Report, there was an absence of medical records at the time of the drafting of the report. It is the defense's understanding from a conversation with Probation Officer Sharpe that records have been provided in the interim and will be attached to the Final Probation Report. The defense has also provided the attached reports dated 10/17/07, 1/12/05, and 11/16/04. [**EXHIBIT B**]. These reports confirm Mr. Lasell's physical and mental deterioration PRIOR to his current criminal problems.

Likewise, the defense has also provided letters from two of his doctors – Dr. Hou and Dr. Wilson – to show his current treatment and the risk of immediate and un-prepared entry into a custodial environment. [Dr. Hou's letter was provided to the Probation Officer and is attached to her report, while Dr. Wilson's is attached here as **EXHIBIT C**].

Dr. Hou writes, "[H]is regime of medications includes relatively large amounts of narcotics which have been adjusted by the Chronic Pain Program at Kaiser South San Francisco." Dr. Hou states the effect of even a slight change in his medications due to confinement is "[F]irst his depression would worsen from inadequate psychiatric management and increased pain, both from

11

migraines and chronic pain." "Second, he would be at risk if assaulted or if unable to maintain suitable body positions given the degree of radiculopathy and spinal stenosis… this would require surgical intervention that would have been preventable in the first place. Dr. Hou opines that "aggravation or re-injury to his back could possibly result in near or complete paralysis of either or both legs." Finally, Dr. Hou questions whether basic daily functions could be performed by Mr. Lasell such as dressing, bathing, or eating.

The defense also proactively secured the assistance of Dr. Douglas Korpi, Ph.D., for a psychological evaluation to address Mr. Lasell's psychopathology, amenability to treatment, and risk of re-offense. Dr. Korpi is a preeminent expert in the State of California and is regularly called upon by the California Department of Mental Health for psychological evaluations as a basis for commitment under the California Sexually Violent Predator Act, and subsequent testimony as an expert in California Superior Court. [Dr. Korpi's report has been attached to the Probation Report].

The defense will not repeat Dr. Korpi's entire report. However, Dr. Korpi very thoroughly evaluates Mr. Lasell for any psychopathology, his amenability to treatment and his risk of recidivism. Ultimately, Dr. Korpi concludes that "when we put this all together, what we see before us is a well socialized pharmacist who is not in the least bit antisocial, not in the least bit criminologic, and not at all prone to sexual re-offense as it relates to the ongoing factors in his life."

The Assistant U.S. Attorney urges this Court to take Mr. Lasell into custody immediately. The argument will assumably be the same as argued at the time of the entry of the plea: the seriousness of the offense, the high risk of flight or suicide, and the need for safety of the community. All of these concerns are clearly valid. However, in the case of Mr. Lasell, the value of the mitigating factors overwhelmingly outweighs the justifications for immediate custody.

First, Federal agents searched Mr. Lasell's home on July 31, 2007. Mr. Lasell obviously knew on July 31st that he faced severe criminal consequences. In September of 2007, counsel for Mr. Lasell met with AUSA Danner to view some of the images and discuss a proffer agreement. On

12

October 26, 2007, Mr. Lasell and counsel for both the Government and the defense met to provide a proffered statement with a signed proffer agreement. It was very clear after that meeting that Mr. Lasell would be facing federal criminal charges. On November 19, 2007, Mr. Lasell was arraigned in the United States District Court on charges of transportation and possession of child pornography. Mr. Lasell has remained released on home detention since November 19th. Mr. Lasell has remained trouble-free while on pretrial release and has the support of Anthony Granados of Probation Pretrial Services.

Secondly, Mr. Lasell entered his plea on May 5, 2008 with a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Mr. Lasell agreed to a four year term of imprisonment, and has been released with that four year term pending for the past three months without incident.

Third, it is in the best interest of the Bureau of Prisons to have advanced notice of his medical and psychological history, his prescriptions and course of medications, and thereby develop a treatment plan in advance of his surrender. Certainly, if Mr. Lasell can be delivered to Federal custody with a determined treatment plan it would drastically reduce the risk of physical harm or mental deterioration. The risk of re-offense or self harm is drastically lower if allowed to self-surrender than the risk of harm if simply "deposited" into federal custody on the day of sentencing.

Finally, the Court should be aware that Mr. Lasell's medical and psychological struggles PRE-DATE his criminal conduct. The medical reports and his own history indicate that his back surgery, unemployment from his disability and migraine pain was being treated years before his possession of any illegal or inappropriate materials. This mitigation is NOT simply an excuse to avoid punishment.

**4. Imposition of a fine below the Guideline Range**

USSG section 5E1.2 provides the Fines for Individual Defendants. Section 5E1.2(c) defines the minimum and maximum fine amounts for an Offense Level of 28 as $12,500.00 and $125,000.00,

respectively. However, as this is aware, in the post-Booker era, the Guidelines are merely advisory. Section 5E1.2(d) states that the Court shall consider the following factors in the determining the amount of a fine:

1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) *in light of his earning capacity and financial resources*;

3) *the burden that the fine places on the defendant and his dependants relative to the alternative punishment;*

4) any restitution or reparation that the defendant has made or is obligated to make;

5) *any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;*

6) whether the defendant previously has been fined for a similar offense;

7) the expected costs to the government of any term of probation, or term of imprisonment and terms of supervised release imposed; and

8) *any other pertinent equitable considerations.*

The defense respectfully asks this Court to not punish the Lasell family financially for their extensive, sound, conservative financial planning over the past thirty years. The Guidelines include "the ability to pay" as a factor for consideration. However, it seems unjust that someone who lives within their means for an extended amount of time and dutifully saves towards retirement would be penalized for such efforts. Meanwhile, someone who spends without prohibition and places him and his family in dire financial straits would benefit from such careless actions. Mr. Lasell will be

14

punished with four years in federal custody. All the punitive and deterrent factors of a criminal sentence will be served with the imprisonment. A fine would be unjust.

## VI. THE RECOMMENDATION CONTAINED IN THE PRESENTENCE REPORT

The Probation Report and Recommendation indicates a sentence and below the Guidelines range. Despite the severity of the offense, the impact on the victims, the number of images, and the allegations of transport of the pornographic images, the recommendation is for a below the minimum range. Ms. Sharpe finds that Mr. Lasell clearly indicates remorse and acceptance of responsibility, and has taken immediate steps to address his offense and any chance of recidivism. Ms. Sharpe further states that "the defendant is viewed as a good candidate for voluntary surrender". The defendant has kept all court appearances, complied with the conditions of pretrial release and is not viewed as a flight risk or a danger to the community." The Probation report accurately reflects that the 48 month sentence and five year release supervision would adequately address all the sentencing concerns.

## VII. CONCLUSION

Based on the foregoing, it is respectfully submitted that this Court adhere to the Plea Agreement disposition of 48 months of imprisonment and five years of supervised release. Further, the defendant respectfully asks this Court to allow him to self surrender at a future date and specified location. The defense would ask this Court to allow the medical staff that has been diligently treating Mr. Lasell more time to develop a treatment plan that would allow a safe incarceration and service of his 48 months. In the alternative, the defendant respectfully asks this Court to allow a self-surrender at a future date to allow for adequate preparation by the Bureau of Prisons. Finally, the defense seeks a minimal fine below the $12,500.00 suggested by the Probation Department and indicated by the Guidelines.

15

1 | Dated: August 4, 2008

Respectfully submitted,

Jonathan D. McDougall
Attorney for Defendant
PETER LASELL